# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

JOHN S. PANIAGUAS, ET AL.,                )
                                          )
      Plaintiffs,                     )
                                          )
      v.                              )     CAUSE NO.:  2:04-CV-468-PRC
                                          )
ALDON COMPANIES INC., ET AL.,             )
                                          )
      Defendants.                     )

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss [DE 19], filed by Aldon Companies,

Inc., Officers and Directors of Aldon Companies, Inc., Aldon Builders, Inc., Officers and Directors

of Aldon Builders, Inc., and Bradley A. Gomez (collectively "Aldon Defendants") on December 27,

2004, and a Motion to Dismiss [DE 25], filed by Endor, Inc., William C. Cunha, Jr., Officers and

Directors of Endor, Inc., Wade Cunha, Greatbanc Trust Company Trust No. 7832 (under Trust

Agreement dated March 6, 1996), Endor Real Estate Service, Inc., and Officers and Directors of

Endor Real Estate Services, Inc. (collectively "Endor Defendants") on January 7, 2005.  For the

following reasons, the Court denies the Aldon Defendants' Motion to Dismiss [DE 19] and grants

the Endor Defendants' Motion to Dismiss [DE 25].

## PROCEDURAL BACKGROUND

On November 12, 2004, the Plaintiffs, John S. Paniaguas, Kathy R. Paniaguas, Woodrow

Cornett III, and Kristine E. Cornett, filed their Complaint for Revocation/Rescission of Contract for

Violations of the Interstate Land Sales Act against the Aldon Defendants, the Endor Defendants, and

Delores Hatcher.  The Complaint alleges that the Defendants violated the Interstate Land Sales Full

Disclosure Act ("ILSA" or "Act"), 15 U.S.C. § 1701 *et seq*.  The Plaintiffs assert that the Defendants

violated the ILSA by: (i) not registering with the Department of Housing and Urban Development, Interstate Land Sales Office, in Washington D.C. as developers in interstate commerce selling and marketing land in a subdivision; (ii) failing to furnish the Plaintiffs with required notices under the Act; (iii) failing to furnish the Plaintiffs with copies of registration statements; (iv) failing to comply with local codes and standards; (v) failing to furnish the Plaintiffs with printed property reports required by the Act; (vi) failing to complete the streets and install the streetlights in Fieldstone Crossing, Units One and Two; (vii) and failing to comply with additional sections of the Act and participating in activities proscribed by the Act.  The Plaintiffs further allege that by failing to register and provide the documentation required by the ILSA, the Defendants caused a misrepresentation to the Plaintiffs through incomplete, misleading, and false information upon which the Plaintiffs relied to their detriment.  The Plaintiffs seek revocation and rescission of their respective purchase agreements, damages, attorney fees and costs, and independent appraiser fees.

On December 28, 2004, Defendant Delores Hatcher filed her Answer to the Plaintiffs' Complaint.  On December 27, 2004, the Aldon Defendants filed their Motion to Dismiss and supporting brief.  On January 7, 2005, the Endor Defendants filed their Motion to Dismiss and supporting brief.  On February 24, 2005, the Plaintiffs filed their Memorandum in Opposition to Aldon Defendants' Motion to Dismiss and their Memorandum in Opposition to Endor Defendants' Motion to Dismiss.  On March 11, 2005, the Endor Defendants filed their Reply, and on March 14, 2005, the Aldon Defendants filed their Reply.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND

The following facts are drawn from the Plaintiffs' Complaint and their Memoranda in Opposition to the Defendants' Motions to Dismiss, with the exception of the state court procedural background.

Plaintiffs John S. Paniaguas and Kathy R. Paniaguas purchased their home, a lot at 9347 Fillmore Court, Crown Point, Lake County, Indiana, in the Fieldstone Crossing Subdivision, Unit 1, from the Aldon Defendants on July 6, 1993.  Plaintiffs Woodrow Cornett III and Kristine E. Cornett purchased their home, a home under construction at 9405 Fillmore Court, Crown Point, Lake County, Indiana, in the Fieldstone Crossing Subdivision, Unit 1, from the Aldon Defendants on April 3, 2001.  The homes purchased by the Plaintiffs were subject to the Restrictive Subdivision Covenants of Fieldstone Crossing Subdivision ("Restrictive Covenants"), recorded in Lake County, Indiana.

On December 11, 2002, the Aldon Defendants sold the remaining undeveloped lots of the Fieldstone Crossing Subdivision, Unit 1 and Unit 2, to Defendant Endor, Inc.  Pursuant to the Real Estate and Purchase Agreement, Endor, Inc. assumed responsibility for street paving, street lighting, enforcement of the Restrictive Covenants, and control over the architectural committee.

In purchasing their homes, the Plaintiffs allege that they relied on the guarantee by the Aldon Defendants that all homes constructed in the Fieldstone Crossing Subdivision would be externally harmonious.  The Plaintiffs allege that they were induced to purchase their homes by the Aldon Defendants' representations that the homes in Fieldstone Crossing would be of similar quality as the homes built by the Aldon Defendants in the Northwoods Subdivision.  The Aldon Defendants assured the Plaintiffs that Fieldstone Crossing complied with all local codes and standards, that the

3

subdivision would be completed with homes of similar quality and harmony within three years, and that the paved streets would be completed within three years.

The Plaintiffs claim that to date, the paved streets have not been completed and only one streetlight has been installed in Fieldstone Crossing, Unit One and Unit Two. The Plaintiffs also allege that the Endor Defendants violated the Restrictive Covenants by constructing and/or approving the construction of homes with inferior workmanship and materials, which are incongruous and not in harmony with the design of the Plaintiffs' homes and with the other homes previously constructed by the Aldon Defendants.

On October 15, 2003, the Plaintiffs, among others, filed a Verified Complaint for Preliminary Injunction, Permanent Injunction and Monetary Damages against Endor Real Estate Services, Inc. in the Lake County Circuit/Superior Court for violation of the Restrictive Covenants (hereinafter "state court action"). On October 15, 2004, the Complaint was amended to add additional claims and to add the Aldon Defendants and remaining Endor Defendants as additional Defendants. The state court action remains pending. The Plaintiffs subsequently brought this action in federal court for violations of the ILSA by the Defendants.

## MOTION TO DISMISS STANDARD

After the Federal Rules of Civil Procedure were adopted in 1938, parties no longer had to plead facts that, if true, would establish each element of a cause of action. *See Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), *cert. denied*, 516 U.S. 1159 (1996). Instead, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Thus, the federal procedural rules employ a notice-based pleading system rather than a fact-based pleading

4

system.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998); Fed. R. Civ. Pro. 8.  Rather than requiring the plaintiff to plead all of the facts underlying the alleged claim, the general rule simply requires "a short and plain statement of the claims showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A party's complaint should provide the opposing party "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Leatherman*, 507 U.S. at 168 (quoting *Conley*, 355 U.S. at 47).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to rule on its merits.  *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Rule 12(b)(6) allows a defendant to raise as a defense the failure of the plaintiff to "state a claim upon which relief can be granted."  Rule 12(b)(6); *Cook*, 141 F.3d at 327.  When deciding a motion to dismiss, the Court considers all allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 626-27 (7th Cir. 1995). If the complaint, viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief can be granted, the Court must dismiss the case.  *See* Fed. R. Civ. P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).  However, it is well established that the Court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.  *See Conley*, 355 U.S. at 45-46; *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).

The general rule is that, when documents are submitted with a Rule 12(b)(6) motion to dismiss, the Court must either convert the motion into a motion for summary judgment under Rule 56 or set aside the documents attached to the motion and rule on the motion to dismiss under Rule

12(b)(6).  *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).  However, the pleadings which the Court may consider include the complaint, the answer, and any written instruments attached to the complaint as exhibits.  *See Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).  In addition, documents submitted with a motion to dismiss are treated as part of the pleadings if they are "referred to in the plaintiff's complaint and are central to his [or her] claim."  *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal quotation marks omitted) (indicating that this rule prevents the plaintiff from avoiding dismissal simply by failing to attach important documents to the complaint).  Finally, a plaintiff may supplement the complaint with an affidavit or a brief, such as a brief opposing dismissal.  *See Hrubec v Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992); *Potter v. ICI Americas, Inc.*, 103 F. Supp. 2d 1062, 1065 (S.D. Ind. 1999).  When resolving a motion to dismiss under 12(b)(6), the district court is entitled to take judicial notice of matters in the public record without converting the motion to dismiss into a motion for summary judgment.  *See Anderson v. Simon,* 217 F.3d 472, 474-75 (7th Cir.2000) (citing *Henson v. CSC Credit Servs*., 29 F.3d 280, 284 (7th Cir.1994)).

## ANALYSIS

The Endor Defendants bring their Motion to Dismiss on the bases that: (1) the Plaintiffs have failed to state a claim against them under the ILSA; (2) dismissal is required pursuant to the *Younger* Abstention Doctrine; and (3) dismissal is appropriate under the *Rooker-Feldman* Doctrine.  The Aldon Defendants bring their Motion to Dismiss on the bases that the Plaintiffs have failed to state a claim against them under the ILSA and that this Court lacks subject matter jurisdiction.

The underlying purpose of the ILSA is to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him or her to make an informed decision about purchasing the property. *See Law v. Royal Palm Beach Colony*, 578 F.2d 98, 99 (5th Cir. 1978). The Act was designed to protect "purchasers" from abuse by real estate "developers" through interstate commerce and the use of the mails in the promotion and sale of properties offered as part of a common promotional plan. *Nargiz v. Henlopen Developers*, 380 A.2d 1361, 1362 (Del. 1977). In passing the ILSA, Congress desired to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually unsuitable such as land under water or useful only for grazing. *See Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447 (11th Cir. 1985). Although Congress was primarily concerned with the sale of raw land, it made the ILSA applicable to the sale or lease of lots in subdivisions as well. *Id.* Improved land was not entirely exempted from the provisions of the ILSA, but Congress did provide an exemption for improved land on which a residential, commercial, condominium, or industrial building exists or where the contract of sale obligates the seller to erect such a structure within two years. 15 U.S.C. § 1702(a)(2).

The ILSA provides a purchaser of a residential lot with a cause of action against the developer or agent of the developer for violations of ILSA's registration and disclosure provisions. 15 U.S.C. § 1709. In order to prove an ILSA claim, a plaintiff must first show that he or she qualifies for ILSA protection. Second, a plaintiff must show that a defendant made an untrue statement or omitted a material fact from a property report in violation of 15 U.S.C. § 1703(a)(1) or that a defendant made an untrue statement or omitted a material fact in a defendant's dealings with purchasers in violation of § 1703(a)(2).

In order to qualify for ILSA protection, a plaintiff must show that he or she purchased a lot from a defendant who qualifies as a developer or developer's agent under the ILSA.  The ILSA defines a developer as, "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. §1701(5).  The Act defines an agent as, "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease any lot or lots in a subdivision." 15 U.S.C. § 1701(6).[1]  The ILSA applies only to developers and their agents, unlike the Federal Securities Acts which apply to "any person." *Bartholomew,* 584 F.2d at 1293-1294.  The Fourth Circuit has held that the ILSA may be extended to officers, directors, and participating planners, although the ILSA does not have a controlling persons clause.  *See Kemp v. Peterson,* 940 F.2d 110, 113 (4th Cir. 1991).  ILSA causes of action are, nevertheless, limited to defendants who are involved in the sales process.  *See Hammar v. Cost Control Mktg. and Sales Mgmt., Inc.,* 757 F. Supp. 698, 706 (W.D. Va.1990).  Thus, the determining factor is whether each defendant participated in sales or could be considered a controlling person in an organization that participated in sales.

## A. The Endor Defendants' Motion to Dismiss

The Endor Defendants move to dismiss the Plaintiffs' Complaint on the basis that it fails to state a claim since the Endor Defendants were neither developers nor agents of developers who sold lots to the Plaintiffs.  The Plaintiffs' Complaint alleges that their respective homes were purchased from Aldon Companies, Inc.  In purchasing their properties, the Plaintiffs dealt only with the Aldon

---

[1]  For purposes of the ILSA, an indirect seller is one who conducts selling efforts through means other than direct, face-to-face contact with buyers. *Bartholomew v. Northampton Nat'l Bank of Easton, Pa.,* 584 F.2d 1288, 1293 (3rd Cir. 1978).  "There is no indication in the language of the statute or in the legislative history of the Act that an indirect seller is other than one who is involved in some manner in the selling efforts related to a land development project." *Id.*

Defendants.  There was no transaction between the Plaintiffs and the Endor Defendants.  The Endor Defendants had nothing to do with the purchases made by the Plaintiffs.

The Plaintiffs have not provided the Court with (and the Court has not discovered on its own) a single case in which a defendant that was not the actual seller or not involved in the sale of the property was liable under the ILSA.  In the cases cited by the Plaintiff in opposing the Endor Defendants' Motion to Dismiss, the plaintiffs purchased their property from the defendants or brought suit against those defendants who were involved in the sale of the property to the plaintiffs. *See McCown v.  Heidler,* 527 F.2d 204, 207 (10th Cir. 1975) (involving individual defendants who were part of the development which sold land to the plaintiffs); *United States v. Cost Control Mktg. Sales Mgmt. of Virginia, Inc.,* 64 F.3d 920, 925 (4th Cir. 1995) (involving defendants who sold lots to the plaintiffs); *Fuls v.  Shastina Prop., Inc.,* 448 F.Supp. 983, 990 (N.D. Ca. 1978) (involving developer and seller who sold lots to the plaintiffs); *Timmrick v. Munn,* 433 F.Supp.  396, 406 (N.D. Ill. 1977) (involving a defendant bank that participated in the transaction whereby the plaintiffs purchased their properties); *Bettis v.  Lakeland, Inc.,* 402 F.Supp. 1300, 1302 (E.D. Tenn. 1975) (denying summary judgment where defendant company purchased assets of original selling entity); *Zachary v.  Treasure Lake of Ga., Inc.,* 374 F.Supp. 251 (N.D. Ga 1974) (holding that plaintiffs' dealings in the purchase of the lots were not with the defendants and thus neither of the defendants were developers or agents under the ILSA).  As set forth earlier, the underlying purpose of the ILSA is to insure that a buyer, *prior to purchasing certain kinds of real estate*, is informed of facts which will enable him to make an informed decision about purchasing the property.  Thus, even when the allegations in the Complaint are viewed in the light most favorable to the Plaintiffs, there are no facts to support a finding that the Endor Defendants are developers or agents under the ILSA.

The Plaintiffs also assert liability under the ILSA based on allegations that the Endor Defendants are successors to the Aldon Defendants. However, the cases cited by the Plaintiffs do not support such a finding. In *Zachary v. Treasure Lake of Georgia, Inc.,* the court held that the defendant, "is, in fact and law, an entity completely separate and distinct from the corporations with whom the plaintiff transacted business. There was no corporate affiliation and no continuity of interests or control. [The defendant] did not sell the plaintiff his lots, had no dealings with the plaintiff and therefore is not liable to the plaintiff under the ILSFDA." 374 F.Supp. 251, 255 (N.D. Ga. 1974); s*ee also Bettis,* 402 F.Supp. at 1302 (citing to *Zachary* as support for denial of summary judgment where defendant company purchased assets of the original selling entity). Similar to the defendants in *Zachary*, the Endor Defendants did not sell any property to the Plaintiffs. Moreover, from the Court's review of the Complaint and the written instruments attached to the Complaint, the Endor Defendants are entities completely separate and distinct from the Aldon Defendants and as such are not liable under the ILSA based on a theory of successor liability.

The Plaintiffs further claim that the Endor Defendants are liable under the ILSA as an aider or abettor. In *Fuls v. Shastina Properties, Inc.,* the only case cited by the Plaintiffs as support for such a proposition, the court held that the defendant could not be held liable as an aider and abettor because the plaintiffs failed to show knowing assistance of or participation in a fraudulent scheme and failed to demonstrate any factual dispute as to the defendant's knowledge or participation in the alleged fraudulent representations. 448 F.Supp. 983, 990 (N.D. Cal. 1978).

In *Rolo v. City Investing Co. Liquidating Trust*, the court, in addressing aider and abettor liability, held that "for a defendant who is neither a 'developer' nor 'agent' as defined by the statute to be liable as an aider and abettor under the Land Sales Act, the defendant must be . . . a 'classic insider' of the developer . . . . Not everyone who is tangentially connected to a fraudulent land

developer is a proper defendant under this interpretation of aider and abettor liability." 845 F.Supp. 182, 219-20 (D. N.J. 1993). In this case, the Plaintiffs have not asserted any facts which demonstrate that the Endor Defendants aided or abetted any of the Aldon Defendants in the original sales transactions since, according to the Plaintiffs' own chronology, the original sales transaction took place long before the Endor Defendants purchased the remaining lots in Fieldstone Crossing and became involved with the subdivision.

The Court finds that the Plaintiffs have not stated a claim against the Endor Defendants as the Endor Defendants are not "developers" or "agents" in this matter as defined by the ILSA and relevant case law. In addition, the Endor Defendants are not successors to the Aldon Defendants and did not aid or abet the alleged fraudulent activities of the Aldon Defendants. Because the Court finds that the Plaintiffs fail to state a claim against the Endor Defendants, the Court need not address the other grounds for dismissal set forth in the Endor Defendant's Motion to Dismiss (dismissal pursuant to the *Younger* Abstention Doctrine and dismissal pursuant to the *Rooker-Feldman* Doctrine). Accordingly, the Court grants the Endor Defendant's Motion to Dismiss Plaintiffs' Complaint.

### B. The Aldon Defendants' Motion to Dismiss

The Aldon Defendants assert that the Plaintiffs' Complaint should be dismissed for failure to state a claim and for lack of subject matter jurisdiction. As an initial matter, the Court finds that it has jurisdiction over this action because it presents a question of federal law. *See* 28 U.S.C. §1331.

11

*1. Exemption Under the ILSA*

The Aldon Defendants state that according to the language of the ILSA, protections afforded by the statute are unnecessary in cases where a unit of local government has ordinances concerning zoning, subdivision control, and building code requirements. The Aldon Defendants claim that because they posted a performance bond for the completion of public improvements with the City of Crown Point, pursuant to the Crown Point Subdivision Control Ordinance, the Fieldstone Crossing lots are exempt under § 1702(b)(5). The statute provides, in relevant part:

> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions requiring registration and disclosure (as specified in section 1703(a)(1) of this title and sections 1704 through 1707 of this title) shall not apply to–
> . . .
> (5) *the sale or lease of a lot which is located within a municipality or county where a unit of local government specifies minimum standards for the development of subdivision lots taking place within its boundaries, when–*
>
> (A)(i) the subdivision meets all local codes and standards, and (ii) each lot is either zoned for single family residences or, in the absence of a zoning ordinance, is limited exclusively to single family residences;
>
> (B)(i) the lot is situated on a paved street or highway which has been built to standards applicable to streets and highways maintained by the unit of local government in which the subdivision is located and is acceptable to such unit, or, where such street or highway is not complete, a bond or other surety acceptable to the municipality or county in the full amount of the cost of completing such street or highway has been posted to assure completion to such standards, and (ii) the unit of local government or a homeowners association has accepted or is obligated to accept the responsibility of maintaining such street or highway, except that, in any case in which a homeowners association has accepted or is obligated to accept such responsibility, a good faith written estimate of the cost of carrying out such responsibility over the first ten years of ownership or lease is provided to the purchaser or lessee prior to the signing of the contract or agreement to purchase or lease;
>
> (C) at the time of closing, potable water, sanitary sewage disposal, and electricity have been extended to the lot or the unit of local government is obligated to install such facilities within one hundred and eighty days, and, for subdivisions which do not have a central water or sewage disposal system, rather than installation of water or sewer facilities, there must be assurances that an adequate potable water supply

is available year-round and that the lot is approved for the installation of a septic tank;

(D) the contract of sale requires delivery of a warranty deed (or, where such deed is not commonly used in the jurisdiction where the lot is located, a deed or grant which warrants that the grantor has not conveyed the lot to another person and that the lot is free from encumbrances made by the grantor or any other person claiming by, through, or under him) to the purchaser within one hundred and eighty days after the signing of the sales contract;

(E) at the time of closing, a title insurance binder or a title opinion reflecting the condition of the title shall be in existence and issued or presented to the purchaser or lessee showing that, subject only to such exceptions as may be approved in writing by the purchaser or lessee at the time of closing, marketable title to the lot is vested in the seller or lessor;

(F) the purchaser or lessee (or spouse thereof) has made a personal, on-the-lot inspection of the lot purchased or leased, prior to signing of the contract or agreement to purchase or lease; *and*

(G) there are no offers, by direct mail or telephone solicitation, of gifts, trips, dinners, or other such promotional techniques to induce prospective purchasers or lessees to visit the subdivision or to purchase or lease a lot.

15 U.S.C. § 1702 (b)(5) (emphasis added).  However, the simple fact that the Aldon Defendants posted a performance bond does not enable the Court to rule as a matter of law that the Fieldstone Crossing lots are exempt under the Act.  Additional facts are needed to determine whether the remaining requirements in subsections A, B(ii), C, D, E, F, and G of the exemption are met.  Thus, the Court finds that the issue of whether the sale of the Fieldstone Crossing lots to the Plaintiffs by the Aldon Defendants is exempt under 15 U.S.C. § 1702 (b)(5) cannot be determined at this stage of the litigation.

The Aldon Defendants also list several other statutory exemptions in their supporting brief without explaining whether or how they qualify for such exemptions.  Although it is not the Court's duty to articulate the parties' arguments when they fail to do so themselves, the Court will address one of the exemptions to which the Plaintiffs specifically respond.

13

The ILSA exempts from its registration and disclosure requirements under § 1703(a)(1) and §§ 1704 through 1707 "the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section."  15 U.S.C. § 1702(b)(1).  The Aldon Defendants appear to claim an exemption under this section, asserting that the only subdivision involved in this matter is the Fieldstone Crossing Subdivision, which according to the Plaintiffs' own calculations, contains fewer than 100 lots.  In contrast, the Plaintiffs allege that the lots subject to this litigation are part of a subdivision consisting of 168 lots, which includes lots developed and promoted by the Aldon Defendants in the Northwoods Subdivision.  The Plaintiffs claim that the Aldon Defendants promoted all of the lots as a "common promotional plan," by representing that the Fieldstone Crossing Subdivision would have the same quality of construction and external harmony of design as exhibited in the Northwoods Subdivision.

The ILSA defines "subdivision" as "any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan."  15 U.S.C. § 1701(3).  The ILSA defines "common promotional plan" as

> a plan, undertaken by a single developer or a group of developers acting in concert, to offer lots for sale or lease; where such land is offered for sale by such a developer or a group of developers acting in concert, and such land is contiguous or is known, designated, or advertised as a common unit or by a common name, such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan.

15 U.S.C. § 1701(4).  The Plaintiffs allege in their Complaint that the Aldon Defendants sold lots from six different developments under two common names and showed parcels in the Northwoods Subdivision to potential purchasers of lots in Fieldstone Crossing, and thus argue that the lots from the six developments should be aggregated for purposes of the ILSA.  The Court finds that the

14

Plaintiffs have alleged sufficient facts at this stage of the litigation to survive the Aldon Defendant's Motion to Dismiss based on the small subdivision exemption under the ILSA. *See United States v. Dacus,* 634 F.2d 441, 444 (9th Cir. 1980) (holding that because "[t]he lands were known collectively by one or two common names, were offered in aggregate newspaper advertisements, and were sold through one sales office by salesmen who had authority to sell parcels from any of the various developments and who would frequently show parcels from a number of developments to a single purchaser," the defendants' sales scheme falls easily within the ambit of the ILSA's regulation; "the mere fact that [defendants] sold lots from a number of variously named developments does not avoid the Act's requirements"); *Wiggins v. Lynn,* 406 F.Supp. 338, 345 (holding that 18 variously named developments were sold collectively as part of a "common promotional plan" for purposes of the ILSA).


  2.  *Promotion of Interstate Sales*

        As further support for their Motion to Dismiss, the Aldon Defendants assert that the Plaintiffs fail to state a claim under the ILSA because the Plaintiffs have not shown that the Aldon Defendants in any way promoted interstate sales.  The ILSA prohibits the following:

> It shall be unlawful for any developer or agent, directly or indirectly, *to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails*--
>
> (1) with respect to the sale or lease of any lot not exempt under section 1702 of this title--
>
> (A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title;
>
> (B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee;

15

(C) to sell or lease any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707 of this title or any regulations thereunder; or

(D) to display or deliver to prospective purchasers or lessees advertising and promotional material which is inconsistent with information required to be disclosed in the property report; or

(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title--

(A) to employ any device, scheme, or artifice to defraud;

(B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; or

(D) to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.

15 U.S.C. § 1703(a) (emphasis added).  The Plaintiffs allege in their Complaint that the Defendants violated the ILSA "by not registering with the Department of Housing and Urban Development, Interstate Land Sales Office, in Washington D.C., *as required of developers in interstate commerce selling and marketing land in a subdivision*."  (Compl. ¶ 41.) (emphasis added).  The Plaintiffs also assert that the Defendants failed to comply with various other obligations under the ILSA that are required of developers in interstate commerce.  (Compl. ¶¶ 140-41, 143-44.)

Although the Plaintiffs do not specifically identify in what manner the Aldon Defendants made "use of any means or instruments of transportation or communication in interstate commerce, or of the mails," on a motion to dismiss, the Court acknowledges the reasonable inferences flowing from the allegations.  *See Christopher*, 536 U.S. at 406; *Chaney*, 52 F.3d at 626-27.  Thus, the Court

16

finds that the Plaintiffs have alleged sufficient facts to support a reasonable inference that the Aldon Defendants were involved with interstate commerce.  *See Gaudet v. Woodlake Dev. Co.,* 399 F.Supp. 1005, 1007 (E.D. La. 1975) (holding that evidence that both the mails and telephone were used to promote the development was sufficient to preclude either dismissal of the action or summary judgment).  In addition, some courts have held that the issue of whether a developer was sufficiently involved in interstate promotions is a question of fact for the jury.  *See, e.g., Happy Inv. Group v. Lakeworld Prop., Inc.,* 396 F.Supp. 175, 187 (N.D. Cal. 1975) (holding that where developers did not apply for and the Secretary had not reviewed any claim of exemption under this chapter, question of whether developers were entitled to exemption on ground that offerings in subdivision were entirely intrastate in nature was an issue of fact for trial, at which plaintiffs would have the burden of showing that there were sufficient interstate offerings and sales to make the subdivisions subject to this chapter).

The ILSA also contains an exemption to the registration and disclosure requirements where the sale or lease of real estate by a developer is "intrastate in nature."  *See* 15 U.S.C. § 1702(b)(7)(A).  However, as part of the conditions for exemption, the purchase or lease agreement must contain "a clear and specific statement describing a good faith estimate of the year of completion of, and the party responsible for, providing and maintaining the roads, water facilities, sewer facilities and any existing or promised amenities."  15 U.S.C. § 1702(b)(7)(A)(iii)(I).  The Plaintiffs contend, and the Aldon Defendants do not dispute, that the purchase agreements involved in this action did not contain such a provision.  Thus, at this stage of the litigation, the Aldon Defendants do not appear to qualify for the intrastate exemption under the ILSA.

*3.  Statute of Limitations*

As an additional basis on which to dismiss, the Aldon Defendants assert that "[t]he claims of plaintiff Paniaguas are clearly time-barred under Sec. 1711."  The Aldon Defendants offer no other discussion in their initial brief regarding the timeliness of the Plaintiffs' claims.  In response, the Plaintiffs allege that their claims are based upon fraud, and as such, either (1) the statute of limitations should be equitably tolled from the date the Plaintiffs could have reasonably discovered the Aldon Defendants' misrepresentation or concealment, or (2) the Aldon Defendants should be equitably estopped from raising the statute of limitations as a defense because of their conduct.

The ILSA sets forth different limitations periods applicable to different types of violations.  *See* 15 U.S.C. § 1711.[2]  However, courts have held that the limitations period is subject to equitable tolling.  *See Happy,* 396 F.Supp. at 188 (stating that in order to successfully toll the ILSA, plaintiffs must make a showing that the defendants concealed from plaintiffs the basic facts forming a cause or action and that the plaintiffs were in ignorance of the facts through no fault of their own) (citing *Baker v. F. & F. Investment,* 420 F.2d 1191 (7th Cir. 1970)).  In addition, the doctrine of equitable

---

[2] 15 U.S.C. 1711 provides:

(a) Section 1703(a) violations

No action shall be maintained under section 1709 of this title with respect to–

(1) a violation of subsection (a)(1) or (a)(2)(D) of section 1703 of this title more than three years after the date of signing of the contract of sale or lease; or

(2) a violation of subsection (a)(2)(A), (a)(2)(B), or (a)(2)(C) of section 1703 of this title more than three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence.

(b) Section 1703(b) to (e) violations

No action shall be maintained under section 1709 of this title to enforce a right created under subsection (b), (c), (d), or (e) of section 1703 of this title unless brought within three years after the signing of the contract or lease, notwithstanding delivery of a deed to a purchaser.

estoppel may prevent a defendant from relying on a statute of limitations defense even though the limitations period has run.  *See Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067 (7th Cir. 1978) (holding that the doctrine of equitable estoppel may apply in suits brought under the ILSA); *Hadad v. Deltona Corp.,* 535 F.Supp. 1364, 1368 (D.C. N.J. 1982).

In the Complaint, the Plaintiffs allege that the Aldon Defendants "concealed from the Plaintiffs material facts with regard to their failure to comply with local codes and standards in the development of the Fieldstone Crossing subdivision, Unit One and Unit Two, thereby preventing the Plaintiffs from discovering the existence of a cause of action [and that such conduct] constituted fraudulent concealment."  (Compl. ¶¶ 91-92.)  The Court finds that the issues relating to equitable tolling and equitable estoppel raise questions of fact not present in the Complaint and attachments thereto.  For example, there is nothing in the Complaint to indicate when the alleged fraud was or should have been discovered.  Since the Plaintiffs' allegations indicate that a tolling of the statute may have occurred, it cannot be said that it appears beyond doubt that the Plaintiffs can prove no set of facts to avoid the statute of limitation bar.  Thus, it is improper for the Court, on a Rule 12(b)(6) motion--the purpose of which is to test the sufficiency of the *pleadings*--to resolve these issues relating to the statute of limitations.

### 4.  Fraud

The Aldon Defendants also assert that in order to state a claim under the ILSA, the Plaintiffs must show "actual fraud," which the Defendants define as "material and false representations of past or existing facts, made with knowledge or reckless ignorance of its falsity, and detrimental reliance." However, in interpreting the ILSA, courts have determined that a plaintiff need not prove actual fraud in order to recover for violations under the Act.  *See e.g., Hester v.  Hidden Valley Lakes, Inc.,*

495 F.Supp. 48, 53-54 (D.C. Miss. 1980) (holding that "[l]iability under [the ILSA] does not depend

upon reliance by the plaintiff on untrue statements, nor does it require intent to deceive on the part

of the defendant").[3]  Rather, once a statement or omitted facts are proven to be "material," liability

is imposed.  *Id.* at 54 (citing *Hill York Corp. v. Am. Int'l Franchises, Inc.,* 448 F.2d 680, 695 (5th

Cir. 1971); *John Hopkins Univ. v. Hutton,* 422 F.2d 1124, 1129 (4th Cir. 1970)).   The test for

determining materiality is, "whether a reasonable investor might have considered the omitted fact

or erroneous statement as important in making a decision."  *Paquin v. Four Seasons of Tenn., Inc.,*

519 F.2d 1105, 1109 (5th Cir. 1975).  The Court therefore denies the Aldon Defendants' Motion to

Dismiss based upon the assertion that the Plaintiffs must show actual fraud.


*5.  Officer and Director Liability*

       The Aldon Defendants argue that Defendant Bradley A. Gomez and the unnamed "officers

and directors" in the Complaint must be dismissed because of corporate insulation from personal

liability.  However, the ILSA has been interpreted to allow for personal liability for individual

officers and directors.  *See, e.g., Kemp*, 940 F.2d at 113 (holding that individual officers, directors

and participating planners can be held individually liable under the ILSA, despite the absence of a

clause establishing liability because "to hold otherwise would defeat the purpose of the Act, since

it is the officers of the corporation who are behind the alleged fraud"); *Gibbes v. Rose Hill*

*Plantation Dev. Co.,* 794 F.Supp. 1327, 1333 (D. S.C. 1992) (stating that in deciding whether

stockholders, officers, or directors of development companies are liable under the ILSA, "the

determining factor is whether each defendant participated in sales or could be a controlling person

_____

[3] The Plaintiffs point out to the Court in their brief that there is a split in authority as to whether detrimental reliance must be established in order to recover under the ILSA for misrepresentations.  Since the Plaintiffs have sufficiently alleged detrimental reliance in their Complaint, the Court need not address this issue in ruling on the Aldon Defendants' Motion to Dismiss.

in an organization that participated in sales").  Accordingly, the Court denies the Aldon Defendants'

Motion to Dismiss Bradley A. Gomez and the "Officers and Directors of Aldon Builders, Inc." from

the Complaint.


6.  *Request to Stay Proceedings*

Without citing legal authority or providing any type of analysis or discussion, the Aldon

Defendants request in the conclusion of their supporting brief, that the Court, at the very least, stay

this matter, pending resolution of the state court action.  A federal court should decline jurisdiction

because of a pending state court suit only in exceptional circumstances.  *See Colorado River Water*

*Conservation Dist. v. United States,* 424 U.S. 800, 813-14 (1976).  The Plaintiffs' state court action

is based on claims of Indiana law, primarily, breach of the Restrictive Covenants.  In contrast, the

Plaintiffs bring this action based on alleged violations of federal law.  Thus, the Court finds that the

Aldon  Defendants  have  not  demonstrated  to  the  Court  the  existence  of  any  exceptional

circumstances justifying a stay in this matter.


**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Endor Defendants' Motion to Dismiss

[DE 25] and **DISMISSES** the Complaint as to Endor, Inc., William C. Cunha, Jr., Officers and

Directors of Endor, Inc., Wade Cunha, Greatbanc Trust Company Trust No. 7832 (under Trust

Agreement dated March 6, 1996), Endor Real Estate Service, Inc., and Officers and Directors of

Endor Real Estate Services, Inc.  Further, the Court **DENIES** the Aldon Defendants' Motion to

Dismiss [DE 19].  This action **REMAINS PENDING** against Aldon Companies, Inc., Officers and

Directors of Aldon Companies, Inc., Aldon Builders, Inc., Officers and Directors of Aldon Builders, Inc., Bradley A. Gomez, and Delores Hatcher.

SO ORDERED on this 17th day of August, 2005.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT


cc:    All counsel of record

22