**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

JOHN S. PANIAGUAS, ET AL.,           )
                                      )
        Plaintiffs,                   )
                                      )
        v.                            )        CAUSE NO.:  2:04-CV-468-PRC
                                      )
ALDON COMPANIES INC., ET AL.,         )
                                      )
        Defendants.                   )

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment Against Plaintiffs [DE 58], filed by the Defendants, Aldon Companies, Inc., Officers and Directors of Aldon Companies, Inc., Aldon Builders, Inc., Officers and Directors of Aldon Builders, Inc., and Bradley A. Gomez, individually (collectively, "Aldon" or "Aldon Defendants"), on February 28, 2006, and a Motion to Strike Affidavit of Bradley A. Gomez [DE 64], filed by the Plaintiffs, John S. Paniaguas, Kathy R. Paniaguas, Woodrow Cornett, III, and Kristine E. Cornett (collectively, "Plaintiffs"), on April 13, 2006.

For the following reasons, the Court **DENIES** the Defendants' Motion for Summary Judgment Against Plaintiffs [DE 58] and **GRANTS IN PART and DENIES IN PART** the Plaintiffs' Motion to Strike Affidavit of Bradley A. Gomez [DE 64].

## PROCEDURAL BACKGROUND

On November 12, 2004, the Plaintiffs filed a Complaint for Revocation/Rescission of Contract for Violations of the Interstate Land Sales Act against the Aldon Defendants; Endor, Inc., William C. Cunha, Jr., Officers and Directors of Endor, Inc., Wade Cunha, Greatbanc Trust Company Trust No. 7832 (under Trust Agreement dated March 6, 1996), Endor Real Estate Services, Inc., and

Officers and Directors of Endor Real Estate Services, Inc. (collectively, "Endor" or "Endor Defendants"); and Delores Hatcher, individually. The Complaint alleges that the Defendants violated the Interstate Land Sales Full Disclosure Act ("ILSFDA" or "Act"), 15 U.S.C. § 1701 *et seq*. The Plaintiffs assert that the Defendants violated the Act by: (I) not registering with the Department of Housing and Urban Development, Interstate Land Sales Office, in Washington D.C. as developers in interstate commerce selling and marketing land in a subdivision; (ii) failing to furnish the Plaintiffs with required notices under the Act; (iii) failing to furnish the Plaintiffs with copies of registration statements; (iv) failing to comply with local codes and standards; (v) failing to furnish the Plaintiffs with printed property reports required by the Act; (vi) failing to complete the streets and install the streetlights in Fieldstone Crossing, Units One and Two; and (vii) failing to comply with additional sections of the Act and participating in activities proscribed by the Act. The Plaintiffs further allege that by failing to register and provide the documentation required by ILSFDA, the Defendants caused a misrepresentation to the Plaintiffs through incomplete, misleading, and false information upon which the Plaintiffs relied to their detriment. The Plaintiffs seek revocation and rescission of their respective purchase agreements, damages, attorney fees and costs, and independent appraiser fees.

On December 27, 2004, the Aldon Defendants filed their Motion to Dismiss and supporting brief. On December 28, 2004, Defendant Hatcher filed her Answer to the Plaintiff's Complaint. On January 7, 2005, the Endor Defendants filed their Motion to Dismiss and supporting brief. The Plaintiffs opposed both Aldon and Endor's motions to dismiss. On August 17, 2005, the Court denied Aldon's motion, but granted Endor's motion and dismissed the Plaintiffs' Complaint as to the Endor Defendants because they were not "developers" or "agents" as defined under ILSFDA nor were they successors to the Aldon Defendants and did not aid or abet the alleged fraudulent activities. *See generally, Paniaguas, et al. v. Aldon Companies Inc., et al.*, No. 2:-04-CV-468-PRC, 2005 WL

1983859, at * 1 (N.D. Ind. August 17, 2005).  On October 20, 2005, the Aldon Defendants/Third-Party Plaintiffs filed a Third Party Complaint against Endor seeking indemnification for any judgment that may be adjudged against the Aldon Defendants/Third-Party Plaintiffs in favor of the Plaintiffs.[1]  On July 13, 2006, the Court dismissed the Plaintiffs' Complaint as to Defendant Delores Hatcher only, pursuant to a stipulation for dismissal filed jointly by the Plaintiffs and Defendant Hatcher.

On February 28, 2006, Aldon filed the instant Motion for Summary Judgment Against Plaintiffs.  In support of its motion, the Aldon Defendants attached the Affidavit of Bradley A. Gomez, the President and sole Officer and Director of both Aldon Companies, Inc. and Aldon Builders, Inc.  On April 13, 2006, the Plaintiffs filed their Response of Plaintiffs to the Aldon Defendants' Motion for Summary Judgment Against Plaintiffs.  On the same day, the Plaintiffs filed the instant Motion to Strike the Affidavit of Bradley A. Gomez.  On May 5, 2006, the Aldon Defendants filed their Response in Opposition to Plaintiffs' Motion to Strike.  On May 12, 2006, the Aldon Defendants filed their Reply to Response of Plaintiffs to the Defendants' Motion for Summary Judgment Against Plaintiffs as well as a Supplemental Affidavit of Bradley A. Gomez.  Finally, on the same day, the Plaintiffs filed their Reply Memorandum in Support of Motion to Strike Affidavit of Bradley A. Gomez.

Because the Aldon Defendants' Motion for Summary Judgment relies on the Gomez Affidavit, the Court will consider the Plaintiffs' Motion to Strike first and the Aldon Defendants' Motion for Summary Judgment in turn.

---

[1] On December 29, 2005, the Aldon Defendants/Third-Party Plaintiffs filed a Motion for Summary Judgment on their Third Party Complaint.  The Motion is fully briefed and currently pending before the Court.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636©.

## MOTION TO STRIKE

In their motion to strike, the Plaintiffs argue that the Gomez affidavit is insufficient to support a motion for summary judgment, proffering two arguments. First, with regard to the affidavit as a whole, the Plaintiffs argue that Gomez, the affiant, lacks personal knowledge and thus the entire affidavit is inadmissible under Federal Rule of Civil Procedure 56(e). As evidence for this assertion, the Plaintiffs point to the first paragraph of the Gomez affidavit, which provides, in relevant part, that Gomez "makes this Affidavit upon his personal knowledge and belief." (Gomez Aff. ¶ 1.) The Plaintiffs argue that the entire affidavit is inadmissible because the phrase "and belief" indicates a lack of personal knowledge. Further, because the first paragraph qualifies the entire affidavit, according to the Plaintiffs, the entire affidavit is inadmissible. Second, with regard to statements made in ¶¶ 8(A) and 9 in particular, the Plaintiffs argue that Gomez draws impermissible legal conclusions regarding the purpose or motive behind the adoption of certain Indiana statutes and local ordinances and intentions of the state Legislature and local governing body.[2]

In response, the Defendants argue that the Gomez Affidavit complies with Rule 56(e) because "it is based on personal knowledge, sets forth facts admissible in evidence, and affirmatively demonstrates that Mr. Gomez is competent to testify." (Defs.' Resp. Mot. Strike 1-2.) The

---

[2]With regard to ¶ 8, the Plaintiffs seek to strike a specific sentence, which reads as follows: "The purpose of the Indiana Subdivision Control Statutes, and the City of Crown Point Subdivision Control Ordinance, is to assure prospective purchasers of subdivision lots that the lot, when purchased, will be buildable [sic] and usable for the purpose for which it is zoned which, in this case, is as single family residential use." However, with regard to ¶ 9, the Plaintiffs fail to specify which sentence(s) they seek to strike.

4

Defendants note that the standard for considering an affidavit at the summary judgment stage is less restrictive than the standard at trial.

*ANALYSIS*

In the instant motion to strike, the Plaintiffs offer two arguments: (1) Gomez lacks personal knowledge because the affidavit is qualified by the phrase "and belief" and thus insufficient to support a motion for summary judgment under Rule 56(e); and (2) in ¶¶ 8(A) and 9 of his Affidavit, Gomez draws impermissible legal conclusions. The Court will consider these arguments in turn.

*1. Gomez Affidavit as a whole*

With regard to the Plaintiffs' first argument, although neither of the parties raised this issue in their briefs, the Aldon Defendants filed a Supplemental Affidavit of Bradley A. Gomez in conjunction with their Reply to Response of Plaintiffs to the Aldon Defendants' Motion for Summary Judgment against Plaintiffs on May 12, 2006. In the first paragraph of the Supplemental Affidavit, Gomez testifies, under oath, to the following:

> 1. All matters, facts and assertions set forth in this Supplemental Affidavit *and in affiant's prior affidavit filed herein on February 28, 2006, are true and accurate and within the personal knowledge of affiant.*

(Gomez Suppl. Aff. ¶ 1) (emphasis added). Consequently, while the Court declines to reach the merits of the Plaintiffs' argument and takes no position regarding whether Gomez lacks personal knowledge as a result of the phrase "and belief" in his initial Affidavit, any deficiency in his initial Affidavit regarding a lack of personal knowledge and thus non-compliance with Rule 56(e) was sufficiently cured by the explicit language in Gomez's Supplemental Affidavit. For example, in *Liberty Curtin Concerned Parents v. Keystone Central School Dist.*, 81 F.R.D. 590 (D.C. Pa. 1978), the defendants moved to strike several affidavits because they were not based on personal knowledge, which, according to the defendants, was evidenced by language in the affidavits "that the facts set

5

forth therein are true and correct to the best of the declarant's knowledge, information and belief."
*Id.* at 604.  The plaintiffs responded that such a statement is insufficient to demonstrate that the
affidavits are not based upon the personal knowledge of the persons who made them.  The defendants
replied, similar to the Aldon Defendants in the instant case, by submitting additional affidavits stating
that the affidavits were reviewed and that the information contained therein was in fact based upon
the personal knowledge of the declarants. The Court held "that the submission of the additional
affidavits is sufficient to cure any defects which existed in the averment portion of the original
affidavits and, consequently, the Court need not reach the question of whether those affidavits
themselves were insufficient."  *Id.*  The Court finds that any possible deficiency in Gomez's initial
Affidavit was sufficiently cured by his Supplemental Affidavit.  Accordingly, the Court need not
decide whether Gomez's initial affidavit is insufficient and thus the Court declines to strike Gomez's
entire affidavit based solely on the words "and belief."  *See also Chronister v. Sam Tanksley
Trucking, Inc.*, 569 F.Supp. 464, 466 (D.C. Ill. 1983) (providing that "[t]he submission of additional
proper affidavits is sufficient to cure any defects which may have existed in the original affidavits")
(citing *Liberty Curtin Concerned Parents*, 81 F.R.D. at 604)); 27A Fed. Proc. L. Ed. § 62:714
(providing that "[w]here an affidavit indicates that it may not have been made upon personal
knowledge and is challenged on this basis by the opposing party, the submission of an additional
affidavit of the same person stating that the statements in the original affidavit were in fact based
upon personal knowledge of the affiant may be sufficient to demonstrate that knowledge").[3]

---

[3]In support of their Motion to strike the entire Gomez Affidavit, the Plaintiffs rely on *Toro
Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986 (N.D. Ind. 1986), which the Plaintiffs cite for the
legal principle that "[s]tatements based merely on knowledge and belief do not satisfy the
standards of Rule 56© [sic] requiring personal knowledge." *Id.* at 989.  In *Toro*, the plaintiffs
responded to the defendants' motion for summary judgment with affidavits, and the defendants
argued that two paragraphs failed to meet the admissibility standard because they were prefaced

    *2. Gomez Affidavit, ¶¶ 8(A) and 9*

    With regard to the Plaintiffs' second argument, the Plaintiffs allege that Gomez draws impermissible legal conclusions in ¶¶ 8(A) and 9 of his initial Affidavit, in which the affiant testifies to the purpose and intentions behind certain Indiana statutes and local ordinances.  The Plaintiffs assert that this information "could not possibly be within the personal knowledge of Gomez, a layperson" and that Gomez "fails to establish why he is competent to testify that he has personal knowledge of the intentions of [a local governing body]."  (Pls.' Mot. Strike ¶ 3.)  The Aldon Defendants respond that, as an experienced developer, Mr. Gomez "does in fact have personal knowledge of the facts asserted" in ¶¶ 8(A) and 9.  (Defs.' Resp. Mot. Strike 4.)

    Rule 56 provides that affidavits filed in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion.  *See generally*, *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1148-1149 (7th Cir.1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989).

For example, the following statements are not properly included in an affidavit and should be disregarded:

        (1) [C]onclusory allegations absent supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) selfserving statements without factual support in the record, *see Shank*

_____

by the phrase "to the best of the affiant's knowledge and belief."  The Court agreed with the defendants and disregarded the two paragraphs from consideration of the motion for summary judgment.  However, in the instant case, the Plaintiffs contend that the disputed phrase qualifies the entire affidavit as opposed to specific paragraphs.  Further, with regard to the two disputed paragraphs in *Toro*, the Court makes no mention of the affiant(s) filing any supplemental affidavits.

> *v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); *Small Bus. Admin. v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.3d 655, 659 (7th Cir. 1991); and (5) mere speculation or conjecture, *see e.g., Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

*Moore v. Ashland Inc.*, No. IP-99-1173-C-T/G, 2000 WL 1672747, at *1 (S.D. Ind. Oct. 30, 2000);

Further, when considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand.  *See Toro*, 644 F.Supp. at 989 (providing that "if the affidavits contain inadmissible allegations, the court must disregard those allegations and consider only the admissible portion in determining whether to grant or deny the [summary judgment] motion") (internal quotation and citation omitted); *Stromsen v. Alumna Shield Indus., Inc.*, No. 89-C-5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993) (providing that "if admissible facts and inadmissible statements are mingled in the same affidavit, the court may rely on the facts and disregard the rest") (citation omitted); The Late Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2738 (Civ. 3d ed. 2006) ("The court will disregard only the inadmissible portions of a challenged affidavit and consider the rest of it").

Applying the above law to the instant case, the Court finds that Gomez's statements in ¶¶ 8(A) and 9[4] regarding the "purpose" behind the state and local subdivision control ordinance and

---

[4] With respect to the statements in ¶ 9, the Plaintiffs failed to specifically note which statements they seek to strike from Gomez's statements, instead only arguing that "[a]nother example [of a legal conclusion] appears in [paragraph 9] in which [Gomez] testifies why the City of Crown Point adopted a certain rule."  (Pls. Mot. Strike 3.)  While the failure to specify what specific portions of the affidavits were objectionable may result in denying the motion to strike as facially insufficient, *see Underwood v. Waddell*, 743 F.Supp. 1291, 1293 (S.D. Ind. 1990), in the instant case, the Court finds that the Plaintiffs sufficiently specified what portions it sought to strike by identifying the paragraph number and describing the sentence.

intentions of the local city council, respectively, fall squarely into the categories of legal argument and a conclusion absent supporting evidence. *See Brettler v. Purdue University*, 408 F.Supp.2d 640, 664 n. 12 (N.D. Ind. 2006) ("Legal arguments ... are not properly included in an affidavit supporting or opposing summary judgment and should be disregarded by the court"); *see also Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded") (citation omitted); *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F.Supp.2d 933, 942 (N.D. Ind. 2005) (providing that legal arguments are not recitations of fact to which an affiant is competent to testify). While the Court declines to address the issue of whether Gomez possesses the requisite personal knowledge to make such statements, the Court finds that Gomez's statements are nevertheless inappropriate because they are not recitations of fact but legal arguments, and thus they are improper testimony in an affidavit in support of a motion for summary judgment.

Accordingly, the Court will disregard the following language from ¶¶ 8(A) and 9 of the Gomez Affidavit: (1) "The purpose of the Indiana Subdivision Control Statutes, and City of Crown Point Subdivision Control Ordinance, is to assure prospective purchasers of subdivision lots that the lot, when purchased, will be buildable [sic] and usable for the purpose for which it is zoned which, in this case, is as single family residential use," (Gomez. Aff. ¶ 8(A)); and (2) "It's a good rule, and one which Crown Point approves for the benefit of the plaintiffs, not the developers", (Gomez Aff. ¶ 9).

9

## MOTION FOR SUMMARY JUDGMENT

### *FACTUAL BACKGROUND*

The following are the facts viewed in the light most favorable to the nonmoving party, the Plaintiffs.[5]

Plaintiffs John S. Paniaguas and Kathy R. Paniaguas purchased their home, a lot at 9347 Fillmore Court, Crown Point, Lake County, Indiana, in the Fieldstone Crossing Subdivision, Unit 1, from the Aldon Defendants on July 6, 1993. Plaintiffs Woodrow Cornett III and Kristine E. Cornett purchased their home, a home under construction at 9405 Fillmore Court, Crown Point, Lake County, Indiana, in the Fieldstone Crossing Subdivision, Unit 1, from the Aldon Defendants on April 3, 2001. The homes purchased by the Plaintiffs were subject to the Restrictive Subdivision Covenants of Fieldstone Crossing Subdivision ("Restrictive Covenants"), recorded in Lake County, Indiana.

On December 11, 2002, the Aldon Defendants sold the remaining undeveloped lots of the Fieldstone Crossing Subdivision, Unit 1 and Unit 2, to Third-Party Defendant Endor. Pursuant to the Real Estate and Purchase Agreement, Endor assumed responsibility for street paving, street lighting, enforcement of the Restrictive Covenants, and control over the architectural committee.

On October 15, 2003, the Plaintiffs, among others, filed a Verified Complaint for Preliminary Injunction, Permanent Injunction and Monetary Damages against Endor Real Estate Services, Inc. in the Lake County Circuit/Superior Court for violation of the Restrictive Covenants. On October 15, 2004, the Plaintiffs amended the Complaint to add new claims as well as to add Aldon and the

---

[5]The Court notes that the Plaintiffs did not include a summary of the facts in their response brief. However, the Plaintiffs did include a statement of genuine issues as required by Local Rule 56.1(a).

remaining Endor Defendants as additional Defendants.  The state court dismissed Aldon, which dismissal remains pending on appeal.  The state court action remains pending as to Endor.

*STANDARD*

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  Rule 56© further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party."  *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.  When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v.*

11

*Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists.  *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

*ANALYSIS*

In support of their motion for summary judgment, the Aldon Defendants proffer numerous arguments: (1) the Aldon Defendants are exempt from the statutory registration and disclosure requirements because the Fieldstone Crossing Subdivision meets the requirements of 15 U.S.C. § 1702(b)(5), a unit of local government with specified minimum standards for the development of subdivision lots; (2) the Aldon Defendants are exempt from the statutory registration and disclosure requirements because the Fieldstone Crossing Subdivision meets the requirements of 15 U.S.C. § 1702(b)(1), a subdivision containing fewer than one hundred (100) lots; (3) the Aldon Defendants did not promote or make use of the means or instruments of transportation or communication in interstate commerce, or of the mails; (4) the Statute of Limitations bars the Plaintiffs' cause of action; and (5) the Plaintiffs failed to allege fraud with any particularity, specifically that they were induced to purchase their lots in the subdivision by some misrepresentation of the facts by Aldon.

The Court will consider these arguments in turn.

1. *Local ordinance exemption, 15 U.S.C. § 1702(b)(5)*

The Aldon Defendants argue that they are exempt from liability pursuant to § 1702(b)(5), which provides an exemption when a unit of local government specifies minimum standards for the development of subdivision lots, because they posted a performance bond for the completion of public improvements with the City of Crown Point.  In support, the Aldon Defendants point to the Gomez Affidavit, in which the affiant "supplies the requisite 'facts'" in order to demonstrate compliance with the seven (7) requirements of the local ordinance exemption pursuant to 1702(b)(5). (Defs.' Mot. Summ. J. 8.)  The Plaintiffs respond by arguing that genuine issues of material fact exist as to whether the Aldon Defendants complied with the local Subdivision Control Ordinance by (1) failing to complete installation and paving of the streets within a finite period of time in accordance

13

with the required design standards; (2) failing to install streetlights at no cost to the City of Crown

Point on all residential streets at intersections and along walkways; (3) failing to comply with

inspection and core test requirements; (4) failing to comply with time limitations for the completion

of improvements required for performance bonds; and (5) failing to maintain an adequate

performance bond.[6] Thus, according to the Plaintiffs, because Aldon has failed to comply with the

local Subdivision Control Ordinance and consequently the requirements of § 1702(b)(5)(A)(I)

providing that a subdivision must meet all local codes and standards, Aldon fails to meet the

requirements of the local ordinance exemption under § 1702(b)(5).

Pursuant to 15 U.S.C. § 1702(b)(5),

> the provisions requiring registration and disclosure ... shall not apply
> to–
> (5) the sale or lease of a lot which is located within a municipality or
> county where a unit of local government specifies minimum standards
> for the development of subdivision lots taking place within
> boundaries, when–
> (A)(I) the subdivision meets all local codes and standards, and (ii)
> each lot is either zoned for single family residences or, in the absence
> of a zoning ordinance, is limited exclusively to single family
> residences;
> (B)(I) the lot is situated on a paved street or highway which has been
> built to standards applicable to streets and highways maintained by the
> unit of local government in which the subdivision is located and is
> acceptable to such unit, or, where such street or highway is not
> complete, a bond or other surety acceptable to the municipality or
> county in the full amount of the cost of completing such street or
> highway has been posted to assure completion to such standards, and
> (ii) the unit of local government or a homeowners association has

---

[6]While the Aldon Defendants argue that they meet all seven (7) requirements, as
evidenced by the Gomez Affidavit, and thus are exempt from the otherwise required provisions
concerning registration and disclosure, the Plaintiffs only provide rebuttal evidence regarding
Aldon's non-compliance with (A)(I), which requires that the subdivision meets all local codes and
standards.  Because the Court finds that the Defendants failed to establish the absence of a
genuine issue of material fact as to Aldon's compliance with § 1702(b)(5)(A),  the Court need not
address the other six (6) requirements.

accepted or is obligated to accept the responsibility of maintaining such street or highway, except that, in any case in which a homeowners association has accepted or is obligated to accept such responsibility, a good faith written estimate of the cost of carrying out such responsibility over the first ten years of ownership or lease is provided to the purchaser or lessee prior to the signing of the contract or agreement to purchase or lease;

© at the time of closing, potable water, sanitary sewage disposal, and electricity have been extended to the lot or the unit of local government is obligated to install such facilities within one hundred and eighty days, and, for subdivisions which do not have a central water or sewage disposal system, rather than installation of water or sewer facilities, there must be assurances that an adequate potable water supply is available year-round and that the lot is approved for the installation of a septic tank;

(D) the contract of sale requires delivery of a warranty deed (or, where such deed is not commonly used in the jurisdiction where the lot is located, a deed or grant which warrants that the grantor has not conveyed the lot to another person and that the lot is free from encumbrances made by the grantor or any other person claiming by, through, or under him) to the purchaser within one hundred and eighty days after the signing of the sales contract;

(E) at the time of closing, a title insurance binder or a title opinion reflecting the condition of the title shall be in existence and issued or presented to the purchaser or lessee showing that, subject only to such exceptions as may be approved in writing by the purchaser or lessee at the time of closing, marketable title to the lot is vested in the seller or lessor;

(F) the purchaser or lessee (or spouse thereof) has made a personal, on-the-lot inspection of the lot purchased or leased, prior to signing of the contract or agreement to purchase or lease; ***and***

(G) there are no offers, by direct mail or telephone solicitation, of gifts, trips, dinners, or other such promotional techniques to induce prospective purchasers or lessees to visit the subdivision or to purchase or lease a lot.

15 U.S.C. § 1702(b)(5) (emphasis added).[7]

---

[7]The Plaintiffs correctly note in their Response that even if the Aldon Defendants qualified for the exemption pursuant to § 1702(b)(5), they would only be exempt from the statutory registration and disclosure requirements of § 1702(b) and not exempt from the anti-fraud provisions of § 1703(a)(2).

As a threshold matter, the Court recognizes "the general rule of construction that exemptions from remedial statutes are to be construed narrowly." *Olsen v. Lake Country, Inc.*, 955 F.2d 203, 206 (4th Cir. 1991) (interpreting ILSFDA); *see also Markowitz v. Northeast Land Co.*, 906 F.2d 100 (3rd Cir. 1990) (same); *DeLuz Ranchos Inv. Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297, 1302 (9th Cir. 1979) (providing that while ILSFDA "should be liberally construed in favor of broad coverage to effectuate its remedial purpose," its statutory exemptions will be narrowly construed).

In order to demonstrate compliance with § 1702(b)(5) and thus qualify for the exemption, the Defendants point to the Gomez Affidavit, in which the affiant recites, in the same order presented in the statute and often times verbatim to the language in the statute, that Aldon has complied with all seven (7) requirements of § 1702(b)(5).  For example, § 1702(b)(5)(A) specifies that the provisions requiring registration and disclosure shall not apply to the sale of a lot located within a municipality or county where a unit of local government specifies minimum standards for the development of subdivision lots taking place within its boundaries when "(I) the subdivision meets all local codes and standards, and (ii) each lot is either zoned for single family residences or, in the absence of a zoning ordinance, is limited exclusively to single family residences."  15 U.S.C. § 1702(b)(5)(A).  In order to demonstrate compliance with subsection (A), Gomez testifies in his affidavit that "[t]he Fieldstone Subdivision meets all local codes and standards, and each lot is zoned for single family residences, consistent with the City of Crown Point Zoning Ordinance, and Subdivision Control Ordinance." (Gomez Aff. ¶ 14(a)).[8]  Except for the self-serving testimony of Gomez, Aldon cites no other evidence in support of its purported compliance with subsection (A).  Bald and self-serving

---

[8]Gomez also testifies to Aldon's compliance with § 1702(b)(5)(A) in ¶ 8(B)(I) of his Affidavit, in which the affiant states that "[t]he Fieldstone Subdivision met all local codes and standards, and each lot was zoned for single family residence pursuant to the Zoning Ordinance of the City of Crown Point, Indiana."  (Gomez Aff. ¶ 8(B)(I).)

declarations, without any evidence or documentation in support, cannot create a genuine issue of material fact as to whether Aldon complied with all local codes and standards in the City of Crown Point, Indiana. *See Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) (providing that "[b]ald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact ..."); *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (providing that "Rule 56 demands something more than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted"); *Perkins v. Ameritech Corp.*, No. 00-C-5655, 2004 WL 2032656, at *13 (N.D. Ill. Aug. 27, 2004) (providing that "bald declarations, without anything more, cannot create a genuine issue of material fact ...").

In addition, although not raised by the parties, the Court finds that Gomez's statements in his affidavit regarding Aldon's compliance with § 1702(b)(5)(A) of the local ordinance exemption are inappropriate for an affidavit and cannot support or defend a motion for summary judgment because they represent "conclusory statements" without supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998); *Wolf Lake Terminals, Inc. V. Mut. Marine Ins. Co.*, 433 F.Supp.2d 933, 942 (N.D. Ind. 2005) (providing that unsupported, conclusory statements are not recitations of fact to which an affiant is competent to testify), as well as self-serving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); *Small Bus. Admin. v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998).

Accordingly, the Court finds that the Aldon Defendants, as the moving party, failed to meet its "initial responsibility" of demonstrating to the Court, by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

17

if any, that there is an absence of a genuine issue of material fact as to Aldon's compliance with the local ordinance exemption pursuant to § 1702(b)(5)(A).  *See Celotex*, 477 U.S. at 323.

  2.  *One hundred (100) lots or less exemption, 15 U.S.C. § 1702(b)(1)*

  The Aldon Defendants argue that they are exempt from the statutory registration and disclosure requirements pursuant to 15 U.S.C. § 1702(b)(1), which provides that the provisions requiring registration and disclosure shall not apply to "the sale of lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section." In support, the Aldon Defendants point to the Gomez Affidavit, in which the affiant testifies that the number of single family lots in the Fieldstone Unit One, Fieldstone Unit Two, and Northwoods Subdivision totals sixty-three (63).[9]  Gomez further notes that even if multi-family lots from the Fieldstone Subdivision were included, the number would still total only eighty-nine (89).  Finally, the Aldon Defendants claim that "[t]here is no evidence that the lots in Northwoods were ever marketed with the lots in Fieldstone."  (Defs.' Mot. Summ. J. 11.)  The Plaintiffs respond by calculating that the Aldon Defendants "developed and promoted" various Northwoods and Fieldstone Crossing subdivisions together totaling one hundred and ninety-two (192) lots.[10]  The Plaintiffs justify the addition of other subdivisions into the total calculation by alleging that the Aldon Defendants "promoted all of these lots as part of a common promotional plan by representing to [the

_____

  [9]The Aldon Defendants calculate their total of 63 in the following way:  Fieldstone Unit One with 19 lots; Fieldstone Unit Two with 18 lots; and Northwoods Subdivision with 26 lots.

  [10]The Plaintiffs calculate their total of 192 in the following way:  Northwoods Subdivision One with 26 lots (included in the Defendants' total);  Northwoods Subdivision Two with 1 lot; Fieldstone Crossing Townhomes One with 76 lots; Fieldstone Crossing Townhomes Two with 52 lots; Fieldstone Unit One with 19 lots (included in the Defendants' total); and Fieldstone Unit Two with 18 lots (included in the Defendants' total).  Therefore, the only differences between the two parties' total is the Plaintiffs' addition of Northwoods Subdivision Two with 1 lot, Fieldstone Crossing Townhomes One with 76 lots, and Fieldstone Crossing Townhomes Two with 52 lots.

Plaintiffs] that the Fieldstone Crossing Subdivision would have the same quality of construction and external harmony of design as exhibited in Aldon's Northwoods subdivision." (Pls.' Resp. Summ. J. 9.) The Plaintiffs assert that the Aldon Defendants "promoted" the six developments as part of a common promotional plan and therefore the "lots from the six developments ... should be aggregated for purposes of the Act." (Pls.' Resp. Summ. J. 11.) In Reply, the Aldon Defendants argue that because the Plaintiffs never considered purchasing a lot in Northwoods or Fieldstone Crossing Townhomes, "there could be no plausible suggestion that Aldon's promotion of Northwoods lots or Fieldstone Townhouse sites could have played any role" in the Plaintiffs' decision to purchase a lot. (Defs.' Reply Summ. J. 10.)

Pursuant to 15 U.S.C. § 1702(b)(1), "the provisions requiring registration and disclosure ... shall not apply to–(1) the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section." ILSFDA defines "subdivision" as "any land which is located in any state and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of common promotional plan." 15 U.S.C. § 1701(3). Further, the Act defines a "common promotional plan" as,

> a plan, undertaken by a single developer or a group of developers acting in concert, to offer lots for sale or lease; where such land is offered for sale by such a developer or group of developers acting in concert, and such land is contiguous or is known, designated, or advertised as a common unit or by a common name, *such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan*.

15 U.S.C.A. § 1701(4) (emphasis added).

As a threshold matter, the Court notes that the Plaintiffs' total of one hundred and ninety-two (192) lots includes three additional developments not mentioned by Aldon: Northwoods Subdivision Two with one (1) lot, Fieldstone Crossing Townhomes One with seventy-six (76) lots, and Fieldstone

Crossing Townhomes Two with fifty-two (52) lots.  The Court must determine whether a genuine issue of material fact exists as to whether these three additional developments were part of a "common promotional plan," as defined in the statute, with Fieldstone Crossing and thus whether the lots are considered part of the same "subdivision" for purposes of the one-hundred (100) lot exemption under § 1702(b)(1).  The Court will consider the evidence regarding Fieldstone Crossing Townhomes and Northwoods in turn.

With regard to Fieldstone Crossing Townhomes, the Aldon Defendants argue, without citing any case law in support, that because the Plaintiffs never considered purchasing a lot in Fieldstone Crossing Townhomes, "there could be no plausible suggestion that Aldon's promotion of ... Fieldstone Townhouse sites could have played any role" in the Plaintiffs' decision to purchase a lot in Fieldstone Crossing.  (Defs.' Reply Summ. J. 10.)  However, the Court notes that this is not the applicable standard.  On the contrary, land shall be considered part of a "common promotional plan" where land is offered for sale by a developer and such land "is known, designated, or advertised as a common unit or by a common name, such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan."  15 U.S.C. § 1701(4).  Therefore, pursuant to the definition of a common promotional plan, Fieldstone Crossing Townhomes and Fieldstone Crossing, without evidence to the contrary offered by Aldon, may be presumed to be part of a common promotional plan because both developments constitute land offered for sale by a developer, where such land "is known, designated, or advertised ... *by a common name* ... ."  15 U.S.C. § 1701(4) (emphasis added).  Accordingly, the Court finds that a genuine issue of material fact exists as to whether Fieldstone Crossing and Fieldstone Crossing Townhomes were part of a "common promotional plan."

As evidence of a common promotional plan with regard to Northwoods, the Plaintiffs allege that the Aldon Defendants, "in inducing [Paniaguas] to purchase a lot and home," provided Paniaguas with a copy of the Northwoods Restrictive Covenants as a frame of reference for what could be expected in Fieldstone Crossing.  (Paniaguas Aff. ¶ 55.)  Furthermore, the Plaintiffs allege that the Aldon Defendants showed parcels in the Northwoods development to potential purchasers of lots in Fieldstone Crossing and in fact used the Northwoods model home as their base of operations for Fieldstone Crossing sales.  (Paniaguas Aff. ¶ 50 (providing that "in inducing us to purchase a lot and home in the Fieldstone Crossing subdivision [the Aldon Defendants] invited us to tour and inspect the quality of construction and external harmony of design of homes constructed in the Northwoods subdivision development, which we did on several occasions before our purchase and while our home was under construction")).  The Paniaguas' further testified in their deposition that the "Northwoods Model served as the Fieldstone Model."  (Paniaguas Aff. ¶ 53; *see also* Cornett Aff. ¶ 21 (providing that "there is absolutely no question in our minds that [the Aldon Defendants] commonly promoted the Northwoods and Fieldstone Crossing subdivisions in inducing us to buy a home and we relied upon those representations")).  Accordingly, the Court finds that a genuine issue of material fact exists as to whether Fieldstone Crossing and Northwoods were part of a "common promotional plan."

In conclusion, construing the facts in favor of the non-movants and narrowly construing the exemption, *see Olsen*, 955 F.2d at 206, the Court finds that genuine issues of material fact remain as to whether Fieldstone Crossing Townhomes and Northwoods developments constitute part of a "common promotional plan" with Fieldstone Crossing.  Consequently, the number of lots at issue remain in dispute and thus summary judgment on the one-hundred (100) lot exemption under §1702 (b)(1) is inappropriate.

3.  *Interstate commerce*, *15 U.S.C. 1703(a)*

The Aldon Defendants argue, relying on the Gomez Affidavit, that "there was never any interstate promotion of lot sales and that no interstate devices were ever used to promote such sales." (Defs.' Mot. Summ. J. 12; s*ee also* Gomez Aff. ¶ 4 ("At no point did [any of the Aldon Defendants] ever promote the sale of Fieldstone Crossing Units 1 or 2 lots outside of the State of Indiana, nor were the U.S. Mails ever used to promote those sales.  There was absolutely no effort by [Aldon] to promote the sale of Fieldstone Crossing lots in interstate commerce")).  The Aldon Defendants further note that all of the Plaintiffs were residents of Indiana at all relevant times.  The Plaintiffs respond alleging three examples in which the Aldon Defendants used instruments or means of interstate commerce: (1) a billboard advertising and promoting Aldon Builders on U.S. Route 30, a federal highway, in Schererville, Indiana; (2) contact regarding "negotiations and performance" between Plaintiff John S. Paniaguas, while at his office in Illinois, and the Aldon Defendants, while at their office in Indiana, via telephone and facsimile transmissions; and (3) various newspaper articles appearing in The Times, a newspaper published in Munster, Indiana with a distribution in Illinois, in which the Aldon Defendants were "unquestionably promoting its development of Fieldstone Crossing to Illinois residents," (Paniaguas Aff. ¶¶ 62-63).[11]  The Plaintiffs assert that these three examples provide ample evidence that the Aldon Defendants used means or instruments of transportation or communication in interstate commerce.  The Aldon Defendants reply that: (1) the

---

[11] The Aldon Defendants do not claim the "intrastate" exemption pursuant to 15 U.S.C. § 1702(b)(7), *see* 24 C.F.R. § 1710.10, which exempts the sale or lease of real estate by a developer who is engaged in a sales operation which is intrastate in nature."  On the contrary, the Aldon Defendants argument sounds in jurisdiction, citing the introductory language in 15 U.S.C. § 1703(a).  While the Court takes no position on whether the Aldon Defendants would even qualify for the "intrastate exemption," the Court finds it necessary to clarify the Aldon Defendants' argument.

billboard is in Indiana and the Plaintiffs do not state whether the billboard "enticed" them to purchase

lots in Fieldstone Crossing; (2) the Plaintiffs misrepresent the contact between Plaintiff John S.

Paniaguas and the Aldon Defendants and the telephone call and facsimile transmissions occurred

after the sale/purchase of the lots; and (3) the Times' materials are not paid advertisements but

newspaper articles merely mentioning Fieldstone Crossing.

Pursuant to 15 U.S.C. § 1703(a), ILSFDA plainly states that the allegedly fraudulent activity

occur in the context of interstate commerce, specifically providing that "[i]t shall be unlawful for any

developer or agent, directly or indirectly, to make use of any means or instruments of transportation

or communication in interstate commerce, or of the mails." 15 U.S.C. 1703(a).  The Act's interstate

commerce requirement does not turn on the residence of the buyer or the seller, but instead "the

fulcrum of the Act rests on the use of instrumentalities of transportation o[r] [sic] communication in

interstate commerce, or of the mails." *Gaudet v. Woodlake Dev. Co.*, 399 F.Supp. 1005, 1006 (E.D.

La. 1975).  ILSFDA was modeled on and closely resembles the full disclosure provisions and

philosophy of the Securities Act of 1933, 15 U.S.C. § 77(a), *et seq.*, which makes it illegal to (1) sell

any security interstate without first filing a registration statement pursuant to section 77(e), and (2)

sell securities interstate by fraudulent means pursuant to section 77(q).  *Flint Ridge Dev. Co. v. Scenic*

*Rivers Assoc. of Oklahoma*, 426 U.S. 776, 778 (1976); *Schenker v. United States*, 529 F.2d 96, 97

(9th Cir. 1976).  Consequently, cases interpreting the Securities Act are instructive in interpreting

ILSFDA.  *See generally, Flint Ridge Dev. Co.*, 426 U.S. at 778; *see also U.S. Dept. of Housing &*

*Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 924 (4th Cir. 1995).

When construing the language of the Securities Act, courts have held that "a showing of minimal use

of such means of communication [of interstate commerce] is sufficient to subject the vendor to

federal jurisdiction under the Securities Act." *Commodore Properties, Inc. v. Hills*, 417 F.Supp.

1388, 1390 (D. Neb. 1976).  Accordingly, as applied to ILSFDA, "minimal use" of "means or instruments of transportation or communication of interstate commerce, or the mails" by a developer is sufficient.  *See Id.* (applying the "minimal use" standard to ILSFDA).  Finally, courts have held that ILSFDA "should be liberally interpreted to achieve its remedial purpose."  *Price v. Owens-Illinois Dev. Corp.*, 646 F.Supp. 314, 316 (M.D. Ga. 1986) (citing *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975), *overruled on other grounds by,* 77 F.3d 1215 (10th Cir. 1996)).

The Court will consider the Plaintiffs' three alleged instances of the Aldon Defendants' "use of any means or instruments of transportation or communication in interstate commerce, or of the mails" in turn.

### a.  Billboard on US Route 30 in Schererville, Indiana

With respect to the billboard, Plaintiffs John S. Paniaguas and Kathy R. Paniaguas testify in their affidavit that "in seeking the location for a home in the Crown Point area, our attention was directed to Fieldstone Crossing when we viewed a large billboard posted in Schererville on the south side of U.S. Route 30."  (Paniaguas Aff. ¶ 12.)  In fact, the affiants assert that after seeing the billboard, they called the number on the billboard to make an appointment with the Aldon Defendants in order to purchase a lot.  (Paniaguas Aff. ¶ 13.)  In reply, the Aldon Defendants argue that "it would clearly be an unwarranted judicial intrusion into the business of the Legislative Department of government to find that ... a billboard on a U.S. Highway in Indiana ... constitutes Interstate Sale Promotion, within the meaning of [ILSFDA]."  (Defs. Reply Summ. J. 5.)  The Aldon Defendants cite no case law or legal authority for their contention that their billboard advertisement on a federal highway is insufficient evidence of use or means of interstate commerce.  Instead, they merely assert that a billboard on a U.S. highway is insufficient, noting that the billboard is in Indiana and "not Illinois or any other state."  (Defs.' Reply Summ. J. 5.)

The Court finds that an advertisement on a billboard on a federal highway qualifies as "making use of any means or instruments of transportation or communication in interstate commerce, or of the mails."  In *State of South Dakota v. Adams*, 506 F.Supp. 50 (D. S.D. 1980), in considering whether the passage of the Highway Beautification Act, 23 U.S.C. § 131, was within the national power and policy of Congress pursuant to the Tenth Amendment and Supreme Court precedent, the Court stated that the "[r]egulation of roadside outdoor advertising, if within the scope of national policy and power, would be brought there by Congress' power over interstate commerce."  *Id.* at 55. Further, the Court explained the effects of "roadside outdoor advertising" upon interstate commerce:

> There can be little doubt that outdoor advertising signs along interstate and primary roads affect interstate commerce.  Such signs are intended to exert influence on the traveling public.  Public travel is part and parcel of interstate commerce.  *See Heart of Atlanta Motel v. United States*, 379 U.S. 241 (1964).  The highways are channels of interstate commerce.

*Adams*, 506 F.Supp. at 55.[12]  By advertising on a billboard along a federal highway, the Aldon Defendants used a channel of interstate commerce, which, in turn "exert[ed] influence on the traveling public."  *Id.*  That influence is evidenced by Plaintiffs John S. Paniaguas and Kathy R. Paniaguas' Affidavit, in which they testify that after seeing the paid advertisement on the billboard along US Route 30, the Plaintiffs pulled over and contacted Aldon to inquire about purchasing a lot.[13]

---

[12]While the language from *Adams* regarding "roadside outdoor advertising" references the interstate commerce clause under the U.S. Constitution and not ILSFDA, the Court still finds the language instructive in addressing the central issue here:  whether a billboard advertisement on a federal highway qualifies as evidence of a developer's "mak[ing] use of the means or instruments of transportation or communication of interstate commerce"?

[13]Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice that US Route 30, also called Lincoln Highway, is an east-west, four-lane, major divided highway that runs from the Illinois state line at Dyer, Indiana to the Ohio state line east of Fort Wayne, Indiana.  *See* http://illi-indi.com.  US Route 30 in Schererville, Indiana is approximately three (3) miles from the Illinois state line.  *See* http://local.live.com; http://maps.google.com.

Moreover, courts have held, with respect to the interstate commerce requirement under ILSFDA, that paid advertisements in newspapers, telephone directories, and the broadcast media constitute the use of means of communication in interstate commerce. *See Commodore Properties, Inc. v. Hills*, 417 F.Supp. 1388, 1390 (D. Neb. 1976). In the same manner, for purposes of the instant case, the Court finds that a paid advertisement on a billboard along a federal highway, upon which it is reasonable that interstate travelers may view the billboard considering its close proximity to the state line, constitutes the use of means of communication or instruments of interstate commerce.

Therefore, the Court finds that a genuine issue of material fact exists as to the Aldon Defendants' paid advertisement on a billboard along a federal highway in Schererville, Indiana, constitutes the use of means or instruments of interstate commerce as required under the Act.

> *b. Communications via telephone and facsimile transmissions between Plaintiff John S. Paniaguas and the Aldon Defendants*

With respect to the use of the telephone and facsimile transmissions, the Court finds that the Aldon Defendants telephone call and facsimile transmissions across state lines are insufficient for jurisdiction under ILSFDA.

In their affidavit, Plaintiffs John S. Paniaguas and Kathy R. Paniaguas testify to the following:

> John [Paniaguas] was contacted in the State of Illinois at his Chicago office by [one of the Defendants] Alfred and Bradley A. Gomez and authorized representatives of Aldon Companies, Inc., and Aldon Builders, Inc., and copies of all correspondence and memos of such contacts and related materials and documentation are attached as Exhibit T.

(Paniaguas Aff. ¶ 9.) The Aldon Defendants do not dispute the existence of the contacts between Plaintiff John S. Paniaguas, while in Chicago, Illinois, and the Aldon Defendants while in Indiana. Instead, the Aldon Defendants assert that these conversations occurred after "the sale/purchase of the lot." (Defs.' Reply Summ. J. 5.) Therefore, according to the Aldon Defendants, the alleged telephone and facsimile contacts are irrelevant for purposes of demonstrating "the use of means or

26

instruments of transportation or communication of interstate commerce ... with respect to the sale or lease of any lot not exempt under section 1702 of this title ... ."  In other words, the Aldon Defendants claim that the Plaintiffs fail to demonstrate that alleged contacts between Illinois and Indiana occurred "with respect to" the sale.

It is unclear from ILSFDA and case law "exactly when in the transaction the facilities of interstate commerce or of the mails must be used, but it is certainly not in the misrepresentation." *Bongratz v. WL Belvidere, Inc.*, 416 F.Supp. 27, 30 n. 2 (D.C. Ill. 1976).  Therefore, the fact that the telephone calls and facsimile transmissions occurred post-sale, as Aldon alleges, is not dispositive.

In their Response, the Plaintiffs cite evidence regarding contacts, via telephone and facsimile, between Plaintiff John S. Paniaguas, while in Chicago, Illinois, and the Aldon Defendants while in Indiana.  Courts have held that minimal use of the mails or telephone is sufficient under ILFSDA. *See e.g., Hammar v. Cost Control Marketing and Sales Management of Virginia, Inc.*, 757 F.Supp. 698, 704 (W.D. Va. 1990) (solicitation by mail or telephone alone is sufficient for jurisdiction under ILSFDA); *Gaudet v. Woodlake Dev. Co.*, 399 F.Supp. 1005, 1007 (E.D. La. 1975) (holding that deposition testimony indicating that the mails and telephone were used to promote the development, either directly or indirectly, was sufficient to preclude either dismissal of the action or summary judgment).  Construing the facts in favor of the non-movant and "liberally interpret[ing ILFSDA] to achieve its remedial purpose", *Price*, 646 F.Supp. at 316 (citation omitted), the Court finds that a genuine issue of material fact exists regarding whether the contacts via telephone and facsimile between Plaintiff John S. Paniaguas, while in Chicago, Illinois, and the Aldon Defendants, while in Indiana, constitute "minimal use" of any means or instruments of transportation or communication in interstate commerce.

c.  *The Times' articles*

27

With respect to the articles in The Times, the Court finds that these newspaper articles regarding the Aldon Defendants are insufficient to constitute "mak[ing] use of any means or instruments of transportation or communication in interstate commerce, or of the mails."  Several courts have held that advertisements placed in the news and broadcast media may constitute use of means of communication in interstate commerce.  *See Commodore Properties*, 417 F.Supp. at 1390 (providing that newspaper advertisements in the Arizona Republic and Phoenix Gazette, along with other forms of advertising, constitute the use of means or communication in interstate commerce under ILSFDA).

However, in the instant case, after careful review of the articles, it appears to the Court that these are not paid advertisements purchased by the Aldon Defendants but instead newspaper stories about the Aldon Defendants.  The Plaintiffs do not cite any case law, interpreting ILSFDA or any similar federal statute, in which mere news stories and articles, appearing in a newspaper with an interstate distribution, regarding a corporation qualified as the corporation making "use of means or instruments of transportation or communication in interstate commerce, or the mails."  In addition, the news articles cited by the Plaintiffs were written by a person under a "by-line."  The Plaintiffs do not allege that the Aldon Defendants initiated the writing or publication of these news stories and articles in any way.  Therefore, it cannot be said that the Aldon Defendants, by their own actions, "ma[de] use of any means or instruments of transportation or communication in interstate commerce, or of the mails."

In conclusion, the Court finds that the billboard advertisement on the federal highway, standing alone, provides sufficient evidence of the Aldon Defendants' "use of means or instruments of transportation or communication of interstate commerce."  The Court further finds that a genuine issue of material fact exists as to whether the contacts via telephone and facsimile between Plaintiff

28

John S. Paniaguas, while in Chicago, Illinois, and the Aldon Defendants, while in Indiana, constitute "minimal use" of any means or instruments of transportation or communication in interstate commerce. Accordingly, the Court denies the Aldon Defendants' motion for summary judgment with regard to the interstate promotion argument.

### 4.  Statute of Limitations, 15 U.S.C. § 1711

The Aldon Defendants argue that the Plaintiffs' claims are barred by the statute of limitations under § 1711 of ILSFDA. In support, Aldon notes that the Plaintiffs filed their state court action on October 15, 2003 and the instant action on November 12, 2004, and that the "underlying grounds" in the two complaints are "identical." (Defs.' Mot. Summ. J. 14.) Accordingly, the Aldon Defendants argue that the Plaintiffs' claims regarding "concealment and inability to discover their claims until the November 12, 2004 filing, are necessarily false on the face of the State Court Record." (Defs.' Mot. Summ. J. 15.) The Plaintiffs respond that, with regard to the Plaintiffs' claims, which are based upon fraud committed by means of other misstatements and omissions, "the time for bringing an action is 'three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence.'" (Pls.' Resp. Summ. J. 20 (quoting 15 U.S.C. § 1711(a)(2))). Further, the Plaintiffs argue that the doctrine of equitable estoppel prevents the Aldon Defendants from relying on the statute of limitations because the Plaintiffs "relied on the Aldon Defendants conduct, including misrepresentations about the improvements and fraudulent concealment of possible causes of action in forbearing suit." (Pls.' Resp. Summ. J. 22.) The Aldon Defendants reply that "[a]ny suggestion that [the Aldon Defendants] purposely misled [the Plaintiffs] on any of these topics [regarding the Restrictive Covenants, street lighting, and/or street paving] to the point where they would not otherwise have purchased is unfounded." (Defs.' Reply Summ. J. 11.)

The Court will consider Aldon's argument that the statute of limitations has expired and the Plaintiffs' argument that the statute of limitations should be equitably tolled in turn.

### a.  Date of discovery of ILFSDA violation

ILSFDA sets forth different time limitations periods applicable to the different types of violations.  For registration and disclosure actions under §§ 1703(a)(1) or (a)(2)(D), no action shall be maintained for an alleged violation "more than three [3] years after the date of signing of the contract or sale of lease."  15 U.S.C. § 1711(a)(1).  For fraud actions under sections §§ 1703(a)(2)(A)-©, no action shall be maintained for an alleged violation "more than three [3] years after discovery of the violation or after discovery should have been made by the exercise of due diligence."  15 U.S.C. § 1711(a)(2).  The burden of establishing the applicability of the statute of limitations falls to the Aldon Defendants; however, when the Plaintiffs dispute the applicability of the statute, the burden then shifts to the Plaintiffs to show why the doctrine of equitable estoppel should be invoked.  *See Melhorn v. AMREP Corp.*, 373 F.Supp. 1378, 1380 (D.C. Pa. 1974).

As a threshold matter, the Court notes that the applicable statute of limitations here is section 1711(a)(2), which provides that no action shall be maintained for an alleged violation "more than three [3] years after discovery of the violation or after discovery should have been made by the exercise of due diligence."

Aldon provides no evidence of the date of the discovery of the ILFSDA violation or when discovery should have been made by the exercise of due diligence, except to note that the Plaintiffs filed a state court action on October 13, 2003 against Endor and added Aldon as a Defendant on October 15, 2004.  Accordingly, the Defendants argue, the Plaintiffs' claim that they were unable to discover their claims until the November 12, 2004 filing of the instant action are false.

30

The Court finds the Defendants' argument to be without merit.  The Plaintiffs' state court filing merely demonstrates that the Plaintiffs discovered alleged state law violations prior to filing the instant action.  Aldon cites no evidence indicating the Plaintiffs had knowledge of possible ILFSDA violations "more than three [(3)] years" prior to filing the instant action.  Accordingly, the Court finds that the Aldon Defendants failed to meet their initial responsibility of demonstrating to the Court, by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is an absence of a genuine issue of material fact as to the statute of limitations.  *See* Fed. R. Civ. P. 56 advisory committee notes (1963 Amendment) (providing that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented").  The Court also notes that factual questions regarding when the Plaintiffs discovered or should have discovered ILFSDA violations are not appropriate for summary judgment.  *See Hadad v. Deltona Corp.*, 535 F.Supp. 1364 (D. N.J. 1982) (holding that a factual question as to when purchasers discovered or by exercise of reasonable diligence should have discovered untrue statement or omissions within ILFSDA was not susceptible to resolution by summary judgment).

*b.  Equitable estoppel*

Courts have held that the limitations period under ILSFDA is subject to equitable tolling. *Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir. 1978) (providing that the doctrine of equitable estoppel may apply in suits brought under the ILFSDA notwithstanding the terms of 15 U.S.C. § 1711); *see also Happy Inv. Group v. Lakeworld Prop., Inc.*, 396 F.Supp. 175 (N.D. Cal. 1975).  The oft-quoted passage regarding when to apply the rule of equitable estoppel reads as follows:

> Estoppel arises where one, by his conduct, lulls another into a false
> security, and into a position he would not take only because of such
> conduct. Estoppel, in the event of a disputed claim, arises where one
> party by words, acts, and conduct led the other to believe that it would
> acknowledge and pay the claim, if, after investigation, the claim were
> found to be just, but when, after the time for suit had passed, breaks
> off negotiations and denies liability and refuses to pay.

*Bomba*, 579 F.2d at 1071 (citation omitted).  In order to invoke the doctrine of equitable estoppel

precluding a defendant from relying on a statute of limitations,

> it is not necessary that the defendant intentionally mislead or deceive
> the plaintiff, or even intend by its conduct to induce delay.  Rather, all
> that is necessary for invocation of the doctrine of equitable estoppel
> is that the plaintiff reasonably rely on the defendant's conduct or
> representations in forbearing suit.

*Bomba*, 579 F.2d at 1071 (citations omitted).

In their Response brief, the Plaintiffs present numerous facts sufficient to demonstrate

Aldon's concealment and misrepresentations and thus invoke the doctrine of equitable estoppel.  The

Plaintiffs testify in their affidavits that they "were assured that the streets would be completed with

streetlights installed 'in short order.' " (*See* Paniaguas Aff. ¶ 19; Cornett Aff. ¶ 24 (providing "[t]hat

among the assurances made by [Gomez] and other representatives of Aldon before we purchased our

home was that paved streets would be completed and streetlights installed throughout the

subdivision")).  Further, the Paniaguas' testify that the Aldon Defendants represented that the

Fieldstone Crossing subdivision would comply with all local codes and standards, would be

externally harmonious, would follow a particular scheme or design and would be governed by the

Fieldstone Crossing restrictive covenants.  The Plaintiffs testify that they were induced by and relied

upon the Aldon Defendants' assurances to their detriment.  (*See* Paniaguas Aff. ¶ 93; Cornett Aff.

¶ 25.)  In *Bomba*, the Seventh Circuit held that a promise to pay a claim will estop a defendant from

asserting the applicable statute of limitations if the plaintiff relied in good faith on defendant's

promise in forbearing suit.  *Bomba*, 579 F.2d at 1071.  Likewise, here, the Aldon Defendants

continually assured and reassured the Plaintiffs that the specified work, i.e. street paving and installing streetlights, would be completed. Essentially, Aldon promised to complete its work and the Plaintiffs relied on those promises in good faith. Applying the *Bomba* standard for equitable estoppel, the Plaintiffs presented facts sufficient to demonstrate that they "rel[ied] on [Aldon's] conduct or representations in forbearing suit." *Id.* at 1071. Accordingly, the Court finds that the statute of limitations, if it has expired, should be equitably tolled.

Accordingly, with regard to the statute of limitations under § 1711 and the date of discovery, the Court finds that the Aldon Defendants failed to present evidence sufficient to establish the absence of a genuine issue of material fact as to the date of the Plaintiffs' discovery of ILFSDA violations. In addition, or in the alternative, with regard to equitable estoppel, the Court finds that the Plaintiffs' presented sufficient evidence of Aldon's concealment and misrepresentations in order to equitably toll the statute of limitations and prevent Aldon from relying on the statute of limitations as a defense.

### 5. Fraud

The Aldon Defendants argue that the Plaintiffs "must make some showing that they were induced to purchase their lots in Fieldstone by some misrepresentation of existing fact(s) uttered by Aldon." (Defs.' Mot. Summ. J. 16.) Citing Rule 9(b), Aldon further claims that the Plaintiffs have not alleged fraud with any particularity "whatsoever." (Defs.' Mot. Summ. J. 17.) The Plaintiffs did not address Aldon's fraud argument in their response.

ILSFDA provides a purchaser of a lot with a civil cause of action against the developer or agent of the developer for violation of its registration and disclosure requirements. In order to prove a claim under ILSFDA, a plaintiff must (1) demonstrate that he or she qualifies for ILSFDA protection, and (2) demonstrate that a defendant made untrue statements or omitted material facts

from a property report in violation of § 1703(a)(1) or that a defendant made an untrue statement or omitted a material fact in a defendant's dealings with purchasers in violation of § 1703(a)(2).

In its August 17, 2005 Order, this Court held that, under ILSFDA, a plaintiff need not prove actual fraud in order to recover for violations under the Act. *See Paniaguas, et al. v. Aldon Companies, Inc., et al.*, No. 2:-04-CV-468-PRC, 2005 WL 1983859, at *11 (N.D. Ind. Aug. 17, 2005) (citing *Hester v. Hidden Valley Lakes, Inc.*, 495 F.Supp. 48, 53-54 (D.C. Miss. 1980) (holding that "[l]iability under [ILSFDA] does not depend upon reliance by the plaintiff on the untrue statements, nor does it require intent to deceive on the part of the defendant")). Citing the *Hester* Court, this Court held that "once a statement is proven to be 'material', liability is imposed." *Id.* (citing *Hester*, 495 F.Supp. at 54).[14] Moreover, in its Motion, Aldon explicitly recognizes that the Court has previously resolved this issue as to whether a plaintiff needs to prove actual fraud under ILSFDA. (*See* Defs.' Mot. Summ. J. 16 ("This [C]ourt has ruled that plaintiffs need not allege or prove 'actual' fraud, under [ILSFDA]")). The Defendants cite no new evidence or case law indicating that ILSFDA requires a plaintiff to demonstrate actual fraud pursuant to §§ 1709 and 1703(a)(2). Accordingly, the Court finds that the Aldon Defendants' argument regarding proof of actual fraud is without merit.

## CONCLUSION

Based on the foregoing, the Court **DENIES** the Aldon Defendants' Motion for Summary Judgment Against Plaintiffs [DE 58]. The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion to Strike Affidavit of Bradley A. Gomez [DE 64]. The Court **GRANTS** the Motion to Strike to the extent that the Plaintiffs seek to strike specific statements in ¶¶ 8(A) and (9)

---

[14] In their Motion for Summary Judgment, Aldon only addresses the issue of the Plaintiffs' burden with respect to proving actual fraud, not the materiality of statements or misrepresentations.

of the Gomez Affidavit; accordingly, the Court **STRIKES and DISREGARDS** the following language from ¶¶ 8(A) and 9 of the Gomez Affidavit, respectively:  (1) "The purpose of the Indiana Subdivision Control Statutes, and City of Crown Point Subdivision Control Ordinance, is to assure prospective purchasers of subdivision lots that the lot, when purchased, will be buildable [sic] and usable for the purpose for which it is zoned which, in this case, is as single family residential use"; and (2) "It's a good rule, and one which Crown Point approves for the benefit of the plaintiffs, not the developers."  The Court **DENIES** the Plaintiff's Motion to Strike to the extent that the Plaintiffs seek to strike the entire Gomez Affidavit.

SO ORDERED this 5th day of September, 2006.

s/Paul R. Cherry_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record